**Opinion filed July 18, 2013**



In The

# Eleventh Court of Appeals

_____

## No. 11-13-00023-CV

_____

## IN THE INTEREST OF K.D.R., JR. AND C.A.M.R., CHILDREN

**On Appeal from the 318th District Court**

**Midland County, Texas**

**Trial Court Cause No. FM 48,337**

### M E M O R A N D U M   O P I N I O N

The trial court entered an order terminating the parental rights of both the mother and the father of K.D.R., Jr. and C.A.M.R. The mother has filed a notice of appeal from the termination order. We affirm.

The mother presents two issues for review. In those issues, she asserts that the evidence is legally and factually insufficient to support the finding that termination is in the best interest of the children.

Termination of parental rights must be supported by clear and convincing evidence. TEX. FAM. CODE ANN. § 161.001 (West Supp. 2012). To determine on

appeal if the evidence is legally sufficient in a parental termination case, we review all of the evidence in the light most favorable to the finding and determine whether a rational trier of fact could have formed a firm belief or conviction that its finding was true. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005). To determine if the evidence is factually sufficient, we give due deference to the finding and determine whether, on the entire record, a factfinder could reasonably form a firm belief or conviction about the truth of the allegations against the parent. *In re C.H.*, 89 S.W.3d 17, 25–26 (Tex. 2002).

To terminate parental rights, it must be shown by clear and convincing evidence that the parent has committed one of the acts listed in Section 161.001(1)(A)–(T) and that termination is in the best interest of the child. FAM. § 161.001. In this case, the trial court found that the mother committed four of the acts listed in Section 161.001(1). The trial court found that the mother had knowingly placed or knowingly allowed the children to remain in conditions or surroundings that endangered the physical or emotional well-being of the children, that the mother had engaged in conduct or knowingly placed the children with persons who engaged in conduct that endangered the children's physical or emotional well-being, that the mother had constructively abandoned the children, and that the mother had failed to comply with the provisions of a court order stating the actions necessary for her to obtain the return of the children. *See id.* § 161.001(1)(D), (E), (N), (O). The mother does not challenge the findings made pursuant to Section 161.001(1). Any one of these unchallenged findings was sufficient to support termination as long as termination was shown to be in the children's best interest. *See id.* § 161.001. The trial court also found that termination was in the children's best interest. *See id.* § 161.001(2).

The trial court additionally determined that termination was proper pursuant to Section 161.004 of the Family Code, which sets out the requirements for

termination when a request for termination has previously been denied by court order. TEX. FAM. CODE ANN. § 161.004 (West 2008). These requirements include a best interest finding. *Id.* § 161.004(a)(4).

The question before us is whether the best interest finding is supported by legally and factually sufficient evidence. With respect to the best interest of a child, no unique set of factors need be proved. *In re C.J.O.*, 325 S.W.3d 261, 266 (Tex. App.—Eastland 2010, pet. denied). But courts may use the non-exhaustive *Holley* factors to shape their analysis. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). These include, but are not limited to, (1) the desires of the child, (2) the emotional and physical needs of the child now and in the future, (3) the emotional and physical danger to the child now and in the future, (4) the parental abilities of the individuals seeking custody, (5) the programs available to assist these individuals to promote the best interest of the child, (6) the plans for the child by these individuals or by the agency seeking custody, (7) the stability of the home or proposed placement, (8) the acts or omissions of the parent that may indicate that the existing parent-child relationship is not a proper one, and (9) any excuse for the acts or omissions of the parent. *Id.* Additionally, evidence that proves one or more statutory grounds for termination may also constitute evidence illustrating that termination is in the child's best interest. *C.J.O.*, 325 S.W.3d at 266.

The Department of Family and Protective Services filed a petition in August 2008 to terminate parental rights. In August 2009, the trial court entered an order denying the Department's request to terminate the mother's parental rights; the trial court found that the mother had committed two of the acts listed in Section 161.001(1) but that the Department had not proven by clear and convincing evidence that termination would be in the children's best interest. At that time, the trial court appointed the Department as the children's permanent managing conservator and the mother as a possessory conservator. In June 2012,

the Department filed an amended petition to modify the prior order and terminate the mother's parental rights.

The record shows that the Department had been involved with the mother and her children since K.D.R., Jr. and C.A.M.R. were infants. The intakes related to the environment they were living in, the relationships that the mother was in, domestic violence, neglectful supervision, and inappropriate people being around the children (including one man who sexually abused the children). At the time of the final hearing in this case, K.D.R., Jr. was fourteen years old, and C.A.M.R. was eleven. They had been placed in the foster home of P.B. in August 2008, and they remained there at the time of the hearing in January 2013.

The Department repeatedly offered the mother services, and she repeatedly refused to let the Department help her. The mother did not comply with numerous provisions of her service plan. The mother failed to participate in family counseling, failed to complete individual counseling, failed to complete a domestic violence program, was inconsistent in attending visitation with the children, and did not have appropriate housing for her children. The mother refused the Department's offer to get her into a facility to help her develop life skills and informed the Department that she did not want to participate in the court-ordered services and did not want help with housing.

The Department's caseworker testified that the children have behavior issues that probably stem from previous abuse and neglect, but that they are doing well in their foster home. The children's behavior issues are being addressed in therapy. The therapist favored terminating the parents' rights and continuing the children's placement in their current foster home. The Department's caseworker also believed that, even though the children did not want their mother's parental rights to be terminated, termination would be in the children's best interest. He testified that the children's behavior was getting worse because "they're just off in limbo with

4

everything right now and . . . by terminating their rights they will be able to move on." At some visitations, the mother made promises to the children that she did not or could not keep. The children's hopes that their mother would be able to be a parent like their foster mother are unrealistic because the mother "is incapable of being that kind of mother." When the mother fails to show up for visitations, the children are sad and become "very angry."

The Department's conservatorship supervisor, Adriana Mendoza, had worked with the children for four years and had previously been their caseworker. She thought highly of and had affection for the children. Mendoza opined that termination of parental rights would be in the best interest of the children because "they need a sense of closure" and because "it is paramount to emotional abuse, what's going on with these boys right now." She explained that "they essentially have the promises that their mother dangled in front of them only for her to disappear again, over and over and over again." The hope that the mother is going to change "is killing them."

Mendoza testified that the children are happy in their placement with P.B.; that they are involved in extracurricular activities; but that, when their problematic behaviors are being discussed, the children's "faces close off" and they ask questions like, "Why can't their mom be there for them?" She testified that various actions of the mother "devastate them." K.D.R., Jr. and C.A.M.R. were aware that the mother quit coming to visits when their younger half-siblings were placed with relatives and the case was closed as to them.[1] K.D.R., Jr. and C.A.M.R. were also aware that their mother did not consistently visit them and said she could not afford to come see them, yet the mother could afford to throw two huge birthday parties at Chuck E. Cheese's for one of the children's half-siblings.

---

[1]We note that, when the Department originally filed this case in 2008, all four of the mother's children were removed. In 2009, the two younger children were permanently placed with relatives, and the Department was dismissed as a party with respect to the two younger children.

P.B., the children's foster mother, testified that the children had lived with her for four years and four months. P.B. testified that both of the children have Tourette's syndrome and ADHD and that she got them started on medication after they moved into her home. She could see a major improvement in them, and "it was pretty smooth sailing for a while." P.B. testified that the children are happy in her home, that they are part of her family, and that the children "are welcome to stay with us until they age out of care or stay with us and keep going to college." P.B. thought that, at the time of the hearing, the situation with parental rights and the mother's visitation was a problem and caused "behavior problems at school and at home trying to get negative attention and acting out." According to P.B., it is not only what occurs during the visits that the mother does attend, but also the inconsistency of her being in and out of their lives, that causes the problems with the children's behavior. Since July 2009, the mother had attended only eighteen of the 158 visitations that she could have had with K.D.R., Jr. and C.A.M.R. Using a calendar that she keeps and makes notes on, P.B. correlated the mother's visitations with the children's problematic behavior. P.B. said that the recent visits had caused setbacks in their behavior. The children are very angry and do not understand why their mother does not care enough or try hard enough. P.B. testified that the children love their mother and would love to be with her but that they do not want to live like they did when they lived with their mother. P.B. testified that she believed that termination of the mother's parental rights would be in the children's best interest.

The CASA advocate for the children, who had been on this case for four years, also recommended that the mother's parental rights be terminated and thought that it would be in the children's best interest to do so. She testified, "I don't believe that it is in their best interest to keep this roller coaster of anticipation, disappointment." The record shows that the trial court conferred with

6

the children in chambers. The trial court's conversation with the children was apparently not recorded.

Even though the mother knew that this case had been set for a final hearing on termination of her parental rights to K.D.R., Jr. and C.A.M.R., the mother failed to appear at the hearing. We note that she was, however, represented by counsel.

Based upon the evidence in the record, we cannot hold that the trial court's best interest finding is not supported by clear and convincing evidence; the trial court could reasonably have formed a firm belief or conviction that it would be in the best interest of both K.D.R., Jr. and C.A.M.R. for the mother's parental rights to be terminated. The evidence is both legally and factually sufficient to support the best interest finding. We overrule the mother's first and second issues.

We affirm the trial court's order of termination.


MIKE WILLSON

JUSTICE


July 18, 2013

Panel consists of: Wright, C.J.,
McCall, J., and Willson, J.

7